# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE SESSION, 1999

**FILED**

October 21, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 02C01-9901-CC-00023 |
| | ) | |
| Appellee, | ) | |
| | ) | McNAIRY COUNTY |
| V. | ) | |
| | ) | HON. JON KERRY BLACKWOOD, |
| BUFORD WILL BARRETT, | ) | |
| | ) | |
| Appellant. | ) | (RAPE OF A CHILD) |

FOR THE APPELLANT:                          FOR THE APPELLEE:

**GARY F. ANTRICAN**                          **PAUL G. SUMMERS**
District Public Defender                      Attorney General & Reporter

**RICKEY GRIGGS**                               **J. ROSS DYER**
Assistant Public Defender                     Assistant Attorney General
P.O. Box 700                                        2nd Floor, Cordell Hull Building
Somerville, TN  38068                         425 Fifth Avenue North
(At Trial)                                            Nashville, TN  37243

**C. MICHAEL ROBBINS**                       **ELIZABETH RICE**
46 North Third Street, Suite 719            District Attorney General
Memphis, TN  38103
(On Appeal)                                        **ED NEAL McDANIEL**
                                                        Assistant District Attorney General
                                                        302 Market Street
                                                        Somerville, TN  38068

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

On October 13, 1997, the McNairy County Grand Jury indicted Appellant Buford Barrett for rape of a child and aggravated child abuse. After a jury trial on June 24, 1998, Appellant was convicted of rape of a child. After a sentencing hearing on July 21, 1998, the trial court sentenced Appellant to a term of twenty years in the Tennessee Department of Correction. Appellant challenges his conviction and his sentence, raising the following issues:

1) whether the evidence was sufficient to support his conviction; and

2) whether the trial court imposed an excessive sentence.

After a review of the record, we affirm the judgment of the trial court.

## I. FACTS

Genett Barrett testified that in May of 1997, she and Appellant were living in a residence with their two-year-old daughter. Although Ms. Barrett and Appellant were married at that time, they subsequently received a divorce.

Ms. Barrett testified that on May 16, 1997, she and her daughter spent the day at home. Sometime between 12:00 and 1:00 a.m., Appellant came home from work. At that time, Ms. Barrett was in the bathroom and her daughter was asleep on a bed. While Ms. Barrett was in the bathroom, she heard her daughter crying. Ms. Barrett testified that when she came out of the bathroom, she saw that her daughter was lying on the bed with her legs hanging over the side and she saw that Appellant had placed his penis inside her daughter's vagina.

Ms. Barrett testified that when she entered the bedroom, Appellant "jerked it out and pulled up his pants real quick" and went into the kitchen. Appellant then grabbed a knife and told Ms. Barrett that if she ever told anyone what had happened, he would kill her. Ms. Barrett then pushed Appellant out of the way and went to care for her daughter. Ms. Barrett subsequently cleaned up the blood that was on her daughter and the bed. Shortly thereafter, Ms. Barrett put some ointment on her daughter and rocked her until she went to sleep.

Ms. Barrett testified that she believed that Appellant's threats were genuine and she was afraid. As a result, she did not tell anyone about the incident until two weeks later when she told her sister.

Ms. Barrett testified that some time after this incident, she and Appellant were interviewed by an individual from the Department of Children's Services. When the individual asked Ms. Barrett whether her daughter had been sexually abused, Appellant put his foot on top of hers. Ms. Barrett interpreted this action to be a reminder of Appellant's previous threat. Ms Barrett did not tell the individual about the incident because she was still afraid.

On cross-examination, Ms. Barrett testified that when she entered the bedroom, Appellant had his back toward her. Ms. Barrett then clarified her earlier testimony by stating that she had not actually seen Appellant's penis in her daughter's vagina, but she assumed that Appellant had placed his penis in her daughter's vagina based on the way that Appellant was standing. Ms. Barrett admitted that she had been charged with sexually abusing her daughter, but she denied that she ever sexually penetrated her daughter.

Dr. Mohamed Bakeer testified that he examined the victim on July 19, 1997. Dr. Bakeer testified that at the time of the examination, Ms. Barrett reported that the victim had been abused two or three months earlier. During the examination, Dr. Bakeer determined that the victim had a urinary tract infection.

Dr. Lisa Long testified that she examined the victim on July 24, 1997. Dr. Long noted that the victim had redness in the genital area and that the victim's genital area was very tender. Dr, Long also noted that the victim had a vagina that was large for her age and Dr. Long opined that this was caused by repeated insertion of an object into the vagina. Dr. Long also testified that during the examination, Ms. Barrett reported that the most recent episode of sexual abuse occurred when Appellant placed his penis in the victim's vagina on the Friday before July 24, 1997.

Dr. Paul Gray testified that he examined the victim on July 25, 1997. Dr. Gray noted that the victim's genital area appeared to be abnormal for a child of that age and he noted that the hymenal ring was absent and there were lesions on the skin around the vagina. Dr. Gray also testified that Ms. Barrett reported that she had seen Appellant having intercourse with the victim one week prior to July 25, 1997.

Dr. Barbara Hostetler testified that she examined the victim on July 29, 1997. Dr. Hostetler noted that the victim had a severe healed injury to the genital area and that the hymenal tissue was completely missing. Dr. Hostetler also noted that the area between the vagina and rectum was very thin, which indicated that the area had been injured and healed. Dr. Hostetler testified that she could not determine when the injuries had occurred, but she opined that the injuries were caused by

penetration. Dr. Hostetler also testified that the injuries were not consistent with penetration by a finger.

Officer Frank LeVasseur of the McNairy County Sheriff's Department testified that on December 12, 1997, Ms. Barrett gave a statement to police in which she admitted to digitally penetrating the victim over a period of time.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was insufficient to support his conviction for rape of a child. We disagree.

When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S.

307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Finally, Rule 13(e) of the Tennessee Rules of Appellate Procedure provides, "findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact beyond a reasonable doubt."

Under Tennessee law, "[r]ape of a child is the unlawful sexual penetration of a victim by the defendant . . . if such victim is less than thirteen (13) years old." Tenn. Code Ann. § 39-13-522(a) (1997).

Appellant argues that the evidence was insufficient because the only direct evidence that he sexually penetrated the victim came from the testimony of Ms. Barrett and Ms. Barrett's testimony contained inconsistencies that canceled each other out. The general rule in Tennessee is that "contradictory statements by a witness in connection with the same fact cancel each other." State v. Matthews, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993). However, "[t]his rule of cancellation applies only when inconsistency in a witness' testimony is unexplained and when neither version of his testimony is corroborated by other evidence." Id. at 450.

Appellant argues that Ms. Barrett's testimony that the offense in this case was committed on May 16, 1997, was canceled out by her statements to various medical personnel that the offense occurred sometime in July of 1997. However, as this

-6-

Court has recently stated, the rule of cancellation only applies when a witness' sworn statements are contradictory. <u>State v. Roger Dale Bennett</u>, No. 01C01-9607-CC-00139, 1998 WL 909487, at *5–6 (Tenn. Crim. App., Nashville, Dec. 31, 1998), <u>perm. to appeal denied</u>, (Tenn. 1999). Because Ms. Barrett's statements to the medical personnel were not sworn statements, the rule of cancellation does not apply.

Appellant also argues that Ms. Barrett's testimony that she saw Appellant with his penis inside the victim's vagina was canceled out by her subsequent testimony that she did not actually see any penetration. However, Ms. Barrett explained that although she did not actually see any penetration, she could tell that Appellant was penetrating the victim based on the way that he was standing. Thus, any inconsistency in Ms. Barrett's testimony was subsequently explained and the rule of cancellation does not apply. <u>See Matthews</u>, 888 S.W.2d at 450.

We conclude that when the evidence is viewed in the light most favorable to the State, as it must be, the evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that Appellant had committed the offense of rape of a child. Ms. Barrett testified that when she left the bathroom, she heard the victim crying. Ms. Barrett also testified that when she entered the bedroom, she saw the victim lying on the bed with her legs hanging off the side and she saw Appellant standing in front of the victim with his pants down. Ms. Barrett testified that when she entered the bedroom, Appellant "jerked it out and pulled up his pants real quick" and he then retrieved a knife and threatened to kill Ms. Barrett if she reported the incident. Although Ms. Barrett admitted that she could not actually see the penetration, she testified that she knew what Appellant was doing by the way that

he was standing. In addition, Ms. Barrett testified that there was a lot of blood on the bed and that the victim was "wet and tore." Dr. Long testified that when she examined the victim, the victim had a vagina that was large for her age and Dr. Long opined that this was caused by repeated insertion of an object into the vagina. Dr. Gray testified that when he examined the victim, he noted that the hymenal ring was absent and that there were lesions on the skin around the vagina. Dr. Hostetler testified that when she examined the victim, she discovered that the victim had sustained injuries to her genital area that had been caused by forceful penetration by something larger than a finger.

In short, we conclude that when the evidence is viewed in the light most favorable to the State, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Appellant had committed the offense of rape of a child. Appellant is not entitled to relief on this issue.

### III. LENGTH OF SENTENCE

Appellant contends that the trial court erroneously imposed a longer sentence than he deserves. We disagree.

"When reviewing sentencing issues . . . including the granting or denial of probation and the length of sentence, the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (1997). "However, the presumption of correctness which accompanies the trial court's action is conditioned

upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider all the evidence, the presentence report, the sentencing principles, the enhancing and mitigating factors, arguments of counsel, the defendant's statements, the nature and character of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. §§ 40-35-103(5), -210(b) (1997 & Supp. 1998); Ashby, 823 S.W.2d at 169. "The defendant has the burden of demonstrating that the sentence is improper." Id.

In this case, Appellant was convicted of rape of a child, a Class A felony. See Tenn. Code Ann. § 39-13-522(b) (1997). The sentence for a Range I offender convicted of a Class A felony is between fifteen and twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1) (1997). The presumptive sentence for a Class A felony is the midpoint of the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c) (1997). If the court finds that enhancement and mitigating factors are applicable, the court must begin with the midpoint and enhance the sentence to appropriately reflect the weight of any statutory enhancement factors and then the court must reduce the sentence to appropriately reflect the weight of any mitigating factors. See State v. Chance, 952 S.W.2d 848, 850–51 (Tenn. Crim. App. 1997).

The record indicates that in determining to impose a sentence of twenty years, the trial court found that no enhancement or mitigating factors were applicable. Appellant argues that the trial court should have applied two statutory mitigating factors to reduce his sentence: (11) he committed the offense under circumstances which demonstrate that he does not have a sustained intent to violate the law, and

(13) he has no prior criminal record. <u>See</u> Tenn. Code Ann. § 40-35-113(11), (13) (1997).

We note that Appellant has failed to support his conclusory statement that the trial court erred when it failed to apply mitigating factors (11) and (13) with any explanation as to why these factors were applicable. However, assuming arguendo that these factors were applicable, we conclude in our de novo review that these factors would be entitled to little, if any, weight under the facts of this case. Moreover, we conclude in our de novo review that the trial court should have applied enhancement factor (15) because, as the father of the victim charged with her care and control, Appellant abused a position of private trust in a way that significantly facilitated the commission of the offense. <u>See</u> Tenn. Code Ann. § 40-35-114(15) (1997); <u>State v. Hayes</u>, 899 S.W.2d 175, 187 (Tenn. Crim. App. 1995). Under these circumstances, we conclude that a sentence of twenty years is entirely appropriate in this case. Appellant is not entitled to relief on this issue.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
DAVID H. WELLES, Judge

_____
NORMA McGEE OGLE, Judge

-10-